IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMSHID IRSHAD, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV173 |
| | ) | |
| v. | ) | |
| | ) | |
| JANET NAPOLITANO, Secretary of the | ) | MEMORANDUM AND ORDER ON |
| Department of Homeland Security, ERIC H. | ) | DEFENDANTS' MOTION TO DISMISS |
| HOLDER JR., Attorney General of the | ) | OR, IN THE ALTERNATIVE, MOTION |
| United States, ROBERT S. MUELLER, | ) | FOR SUMMARY JUDGMENT |
| Director of the Federal Bureau of | ) | |
| Investigation, MICHAEL AYTES, Acting | ) | |
| Deputy Director of the United States | ) | |
| Citizenship & Immigration Services, and F. | ) | |
| GERARD HEINAUER, Director of the | ) | |
| Nebraska Service Center, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On May 16, 2012, the plaintiff, Jamshid Irshad, filed a four-count complaint against the defendants, Janet Napolitano, Secretary of the Department of Homeland Security; Eric H. Holder, Jr., Attorney General of the United States; Robert S. Mueller, Director of the Federal Bureau of Investigation; Michael Aytes, Acting Deputy Director of the United States Citizenship and Immigration Services (USCIS); and F. Gerard Heinauer, Director of the USCIS Nebraska Service Center. (See Compl., ECF No. 1.) Now before me is the defendants' motion to dismiss the complaint or, in the alternative, motion for summary judgment. (ECF No. 8.) For the following reasons, I shall deny the defendants' motion to dismiss the complaint, but I shall grant the defendants' motion for summary judgment.

1

# I.   BACKGROUND

The complaint alleges as follows.[1]  Janet Napolitano, who is sued in her official capacity as the Secretary of the Department of Homeland Security (DHS), is responsible for "administering USCIS and implementing and enforcing the Immigration and Nationality Act." (Compl. at 4, ECF No. 1.)  She has "ultimate decision-making authority" over the USCIS's adjudication of applications for adjustment of immigration status, including the I-485 application at issue in this case.  (Id. (citing 8 U.S.C. § 1103; 8 C.F.R. § 2.1).).)

Eric H. Holder is sued in his official capacity as Attorney General of the United States.  (Id. at 4.)  He "has the authority to adjudicate pending I-485 applications."  (Id. (citing 8 U.S.C. § 1103(g)).)

Robert S. Mueller, who is sued in his official capacity as Director of the Federal Bureau of Investigation (FBI), is responsible for ensuring that the FBI properly completes security clearances for other U.S. government agencies.  (Id. at 4.)

Michael Aytes, who is sued in his official capacity as Acting Deputy Director of USCIS, "has been delegated ultimate decision-making authority" over the adjudication of the I-485 application at issue in this case.  (Id. at 4.)

F. Gerard Heinauer is sued in his official capacity as the Director of the USCIS Nebraska Service Center, and he is "generally charged with supervisory authority over all operations of the USCIS within his district."  (Id. at 5.)  Heinauer supervises the office where the I-485 application that is at issue in this case remains pending.  (Id.)

Jamshid Irshad was born in Afghanistan in 1972.  (Id. at  2, 6.)  After the Soviet Union invaded Afghanistan in 1979, members of Irshad's immediate family supported the National Islamic Front of Afghanistan (NIFA), which was one of many Afghan resistance groups that opposed the

---

[1] The facts set forth in this section are taken from Irshad's complaint.  As explained in Parts II.A-B. below, the facts alleged in Irshad's complaint will be taken as true for the purposes of the defendants' motion to dismiss.

There are additional material facts that will be considered only in connection with the defendants' alternate motion for summary judgment; these facts will be summarized in Part III of this memorandum.

Soviet-backed forces.  (<u>Id.</u> at 2, 6.)  These resistence groups, known collectively as the "Mujahidin," were "supported and funded by the United States."  (<u>Id.</u> at 2; <u>see also id.</u> at 7 ("During the years 1983 to 1988 the U.S. government provided support to NIFA and other Afghan Mujahidin groups in amounts that rose from $30 million in 1980 to more than $600 million per year during the years 1986 to 1989.").)  "In other words, Irshad's family fought on the side of the United States in a Cold War conflict against the Soviet Union."  (<u>Id.</u> at 2.)  Though Irshad was a child at the time of the Soviet invasion, he aided the resistance effort "by carrying supplies for the Mujahidin and giving tours to American and British journalists who visited Afghanistan."  (<u>Id.</u>)  These circumstances eventually placed Irshad's life in great danger,[2] and his family decided that Irshad should seek asylum in the United States.  (<u>Id.</u> at 2, 8.)  Thus, in 1988, Irshad fled to the United States "as an unaccompanied minor."  (<u>Id.</u> at 8.)

Irshad applied for asylum shortly after his arrival in the United States, but "[d]ue to extreme delay on the part of the Immigration and Naturalization Service ("INS") and the immigration court in processing his application," his case was not heard for nearly a decade.  (<u>Id.</u> at 2, 8.)  On February 25, 1998, Irshad was granted asylum.  (<u>Id.</u> at 2, 8.)

One year after being granted asylum, Irshad became eligible to apply for an adjustment of status to "lawful permanent resident."  (<u>Id.</u> at 8 (citing 8 U.S.C. § 1159(b)).)  On March 22, 1999, Irshad filed an Application for Adjustment of Status, Form I-485 (the I-485 application) with the USCIS.  (<u>Id.</u>)  Irshad's I-485 application was not considered for almost nine years.  (<u>Id.</u> at 8.)  Then on February 15, 2008, the USCIS Nebraska Service Center denied Irshad's application without a hearing on the ground that "his transporting of supplies for the Mujahidin as a child constituted material support of an 'undesignated terrorist organization.'"  (<u>Id.</u> at 2-3, 8.)

On March 17, 2008, Irshad filed an I-290B Notice of Appeal with the USCIS, and on April 29, 2008, the USCIS reopened Irshad's I-485 application <u>sua sponte</u>.  (<u>Id.</u> at 9.)  Since that time, no action has been taken on Irshad's application.  (<u>E.g.</u>, <u>id.</u>)  Irshad has filed requests for updates on the

---

[2] The complaint describes the arrest and torture of Irshad's father by the communist regime's secret police; the family's flight to Pakistan as war refugees; Irshad's carrying of weapons, ammunition, flour, and sugar from Pakistan to NIFA in Afghanistan; and two attempts that were made upon Irshad's life before he reached the age of 16.  (<u>See</u> Compl. ¶¶ 18-24.)

status of his application, and on January 24, 2012, the USCIS sent him a letter stating that "we are holding adjudication in abeyance while the Department of Homeland Security considers additional exercises of the Secretary of Homeland Security['s] discretionary exemption authority [which] might allow us to approve your case." (Id. (second alteration in original).)

On May 16, 2012, Irshad filed the instant complaint against the defendants. (See generally Compl., ECF No. 1.) Count I states that Irshad is entitled to "mandamus relief from this Court under 28 U.S.C. § 1361," and that I should "compel the Defendants to issue a final ruling on his I-485 Application." (Id. at 11.) In support of Count I, Irshad alleges that the defendants "have a non-discretionary, mandatory duty to act on Irshad's I-485 Application" within a reasonable time; that the defendants have violated this duty by failing to act on the application; and that the defendants' failure to act has prejudiced Irshad in the following ways: 1) he "cannot travel outside the United States without obtaining special travel authorization or jeopardizing his ability to re-enter the United States," 2) he was required to apply for expedited processing of a travel document, at a cost of $220, in order to renew his driver's license in a timely fashion, and 3) his ability to seek United States citizenship has been impaired. (See id. at 10-11 (citing, inter alia, 8 C.F.R. § 245.2(a); 5 U.S.C. § 555(b); 8 U.S.C. § 1427(a)).) In Count II, Irshad alleges that the defendants violated the Administrative Procedure Act (APA) by failing to process Irshad's I-485 application "within a reasonable time," and therefore they should be compelled to issue a final ruling on the application. (Id. at 11 (quoting 5 U.S.C. § 555(b)).) In Count III, Irshad seeks a declaration that the defendants' "policies, practices, and customs, which deprive Irshad of his right to a timely adjudication of his duly filed I-485 application, violate the United States Constitution, the Immigration and Nationality Act[,] and the Administrative Procedure[] Act." (Id. at 12.) Count IV alleges that Irshad will seek attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, if he prevails in this case. (Id.)

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. See,

e.g., Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520-21 (8th Cir. 2007) (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).  In a facial attack, the standard of review is the same standard that applies to motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6): I must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and I must determine whether the plaintiff has asserted "facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right."  Stalley, 509 F.3d at 521 (citing, inter alia, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)).  (See also infra Part II.B.)  In contrast, "[w]hen a district court engages in a factual review, it inquires into and resolves factual disputes." Faibisch, 304 F.3d at 801.  See also Titus v. Sullivan, 4 F.3d 590, 593 & n.1 (8th Cir. 1993).  In this case, although the defendants have submitted evidence outside the pleadings for my consideration, their attack upon Irshad's jurisdictional allegations is facial, (see Defs.' Br. at 7-9, ECF No. 9), and their motion to dismiss will be analyzed accordingly.

### B.    Rule 12(b)(6)

"Federal Rule of Civil Procedure 8 requires that a complaint present 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557). Also, although a court must accept as true all factual allegations when analyzing a Rule 12(b)(6) motion, it is not bound to accept as true legal conclusions couched as factual allegations.  See id. ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); see also Cook v. ACS State & Local Solutions, Inc., 663 F.3d 989, 992 (8th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

U.S. at 678  (citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).  In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).

### C.    Rule 56

A motion for summary judgment shall be granted by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  See also Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011).  In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party, Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970), and the court must not weigh evidence or make credibility determinations, Anderson, 477 U.S. at 249.

It is the moving party's burden to establish that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(a); Adickes, 398 U.S. at 157.  Therefore, if the moving party does not meet its initial burden, summary judgment must be denied even if no affidavits or other evidence have been submitted in opposition to the motion.  See Adickes, 398 U.S. at 159-60.  After the moving party has met its burden, however, "the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  Singletary v. Missouri Dept. of Corrections, 423 F.3d 886, 890 (8th Cir. 2005).

### III.   ANALYSIS

#### A.   Subject Matter Jurisdiction

Citing Federal Rule of Civil Procedure 12(b)(1), the defendants argue that Irshad's complaint must be dismissed because 8 U.S.C. § 1252(a)(2)(B)(ii) "precludes this Court from exercising its jurisdiction to review USCIS's discretionary decision to place Irshad's Adjustment Application on adjudicatory hold." (Defs.' Br. at 7, ECF No. 9.)

Section 1252(a)(2)(B)(ii) states,

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

The defendants argue that this jurisdictional proscription applies to USCIS's "affirmative decision to put Irshad's [I-485] Adjustment Application on an adjudicatory hold pending a potential exemption" because this decision is committed to USCIS's discretion. (Defs.' Br. at 8, ECF No. 9 (citing, inter alia, Seydi v. USCIS, 799 F. Supp. 2d 714, 719 (E.D. Mich. 2011)).) In support of this argument, the defendants note first that "there is no statutory or regulatory timeline that requires USCIS to adjudicate Irshad's reopened adjustment application." (Id. (citing 8 U.S.C. § 1159(b); 8 C.F.R. § 209.2).) They also note that "USCIS has discretion on how to adjudicate Irshad's application, including withholding adjudication to determine whether an exemption should apply to Irshad." (Id. at 8-9 (citing Seydi, 779 F. Supp. 2d at 719; 8 U.S.C. § 1159(b)).)

In response, Irshad states that he "does not dispute that the Defendants have discretion under the United States Immigration and Nationality Act ("INA") to grant or deny his application." (Pl.'s Br. at 9-10, ECF No. 12 (citing 8 U.S.C. § 1255(a)).) He argues, however, that "the best reading of the INA and the implementing regulations is that the Defendants do not have discretion to fail to process an application within a reasonable amount of time." (Id.)

Many of the judges in this district have considered the issue raised by the defendants, and the majority agree with Irshad that § 1252(a)(2)(B)(ii) does not divest district courts of jurisdiction to

7

review USCIS's failure to adjudicate applications for adjustment of status.  See, e.g., Debba v. Heinauer, No. 8:08CV304, 2009 WL 146039, at *3 (D. Neb. Jan. 20, 2009); Shata v. U.S. Citizenship and Immigration Services, No. 8:08CV74, 2008 WL 2165192, at *2 (D. Neb. May 21, 2008); Al Kurdy v. U.S. Citizenship and Immigration Services, No. 8:07CV225, 2008 WL 151277, at *2-5 (D. Neb. Jan. 10, 2008); Ansari v. U.S. Citizenship and Immigration Services, No. 8:07CV160, 2007 WL 4553920, at *2-5 (D. Neb. Dec. 18, 2007); Qijuan Li v. Chertoff, No. 8:07CV50, 2007 WL 2123740, at *3 (D. Neb. July 19, 2007).  But see, e.g., Yang v. Gonzalez, No. 4:06CV3290, 2007 WL 1847302, at *1 (D. Neb. June 25, 2007).  In essence, the judges who find that jurisdiction exists have concluded that the "defendants have a non-discretionary duty to process the I-485 application within a reasonable time, as distinct from [their] discretionary authority of whether to grant or deny the application[]."  Qijuan Li, 2007 WL 2123740, at *3.  The opposing view holds that agencies have the discretion to determine the pace of the processing of I-485 applications, and their exercise of this discretion is unreviewable.  Yang, 2007 WL 1847302, at *1 (citing cases).

I find that § 1252(a)(2)(B)(ii) does not divest a district court of jurisdiction over a claim that USCIS has failed to adjudicate an application for adjustment of status within a reasonable time.  There is a presumption that favors judicial review of administrative action, and this presumption has been "consistently applied . . . to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction."  Kucana v. Holder, 130 S. Ct. 827, 839 (2010).  In light of this presumption, § 1252(a)(2)(B)(ii) has been construed narrowly; it limits judicial review when Congress has "expressed precisely" that a particular decision is discretionary, and therefore must be shielded from court oversight.  Kucana, 130 S. Ct. at 837-39.  See also Al-Rifahe v. Mayorkas, 776 F. Supp. 2d 927, 932 (D. Minn. 2011) (citing Spencer Enters. v. United States, 345 F.3d 683, 689 (9th Cir. 2003); Iddir v. INS, 301 F.3d 492, 497 (7th Cir. 2002)).  There is no statute, however, that "expresse[s] precisely" that the Attorney General, the Secretary of Homeland Security, or their delegees have discretionary authority to withhold indefinitely the adjudication of an I-485 application.  On the contrary, these officers have a statutory duty "to administer and enforce the immigration and naturalization statutes, including adjudication of applications for adjustment of status."  Ansari, 2007 WL 4553920, at *4 (citing 8 U.S.C. § 1103; 8

8

U.S.C. § 1255).  In other words, the Attorney General, the Secretary of Homeland Security, and their delegees have "a non-discretionary, mandatory duty to act" on an I-485 application.  Ansari, 2007 WL 4553920, at *4 (quoting Yu v. Brown, 36 F. Supp. 2d 922, 931 (D.N.M. 1999)).  This is not to say that they must process I-485 applications in a particular way or within a specific time.  To be clear, I do not mean to suggest that the USCIS lacks the discretion to delay its decision on an application or to hold an application "in abeyance," as alleged in the instant complaint, for a reasonable period.  Nevertheless, I see no indication that the USCIS has the discretion to refuse to resolve the applications placed before it, or to delay its decisions indefinitely.  "The statute requires a decision," id., and § 1252(a)(2)(B)(ii) does not deprive me of jurisdiction to review the Irshad's claim that the defendants have unreasonably delayed a decision on his I-485 application.

Although § 1252(a)(2)(B)(ii) does not serve as a bar to jurisdiction, it remains Irshad's burden to allege "facts that affirmatively and plausibly suggest" a basis for subject matter jurisdiction.  Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citations omitted).  Among other things, Irshad alleges that jurisdiction is proper under the APA and "general federal question jurisdiction."  (Compl. at 5, ECF No. 1 (citing 5 U.S.C. § 702; 28 U.S.C. § 1331).)  The APA does not provide an independent basis for subject matter jurisdiction.  See, e.g., Califano v. Sanders, 430 U.S. 99 (1977).  Even so, district courts have jurisdiction to review federal administrative action under 28 U.S.C. § 1331, provided that Congress has not prescribed another review mechanism or specifically excluded review.  See City of Chicago v. International College of Surgeons, 522 U.S. 156, 182-83 (1997) (discussing Sanders).  The APA states, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  See also 5 U.S.C. § 551(13) (defining the term "agency action" to include "failure to act").  It also states that the reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  See also 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it .").  Because I have concluded that the defendants have a non-discretionary duty to act on an I-485 application and § 1252(a)(2)(B)(ii) does not serve as a

jurisdictional bar to Irshad's suit, I find that § 1331 provides this court with subject matter jurisdiction over Irshad's APA claim.[3]

Irshad's complaint alleges that this court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus Act, 28 U.S.C. § 1361.  (See Compl. at 5, ECF No. 1.) Because I have found that jurisdiction exists under 28 U.S.C. § 1331 and the APA, and because all of Irshad's claims are based upon the same core of operative facts, I see no need to address the other alleged bases of jurisdiction.  See 28 U.S.C. § 1367.

The defendants' motion to dismiss the complaint for lack of subject matter jurisdiction must therefore be denied.

### B.    Whether Irshad Has Failed to State a Claim Under the APA

The defendants argue next that "Irshad fails to state a claim under the [APA] for prejudicial agency delay because USCIS's adjudicatory hold benefits him."  (Defs.' Br. at 9, ECF No. 9.)  Put differently, the defendants submit that Irshad's APA claim must be dismissed because he has failed to allege facts showing plausibly that he was prejudiced by USCIS's failure to adjudicate his I-485 application.  Irshad does not dispute that he must allege prejudice in order to state a claim under the APA, but he emphasizes that the complaint "contains several allegations of harm resulting from the Defendants' failure to adjudicate his I-485 Application, including travel restrictions, fees, impairment of his ability to seek citizenship, and other hardships and inconveniences associated with his non-permanent residency status."  (Pl.'s Br. at 15, ECF No. 12 (citing, inter alia, Compl. ¶¶ 35-36, ECF No. 1)[4].)

---

[3] In a footnote, the defendants state, "Even if this Court determines that section 1252(a)(2)(B)(ii) does not bar its review of Irshad's claim, his claim is nonetheless unreviewable as a challenge to an action 'committed to agency discretion.'"  (Defs.' Br. at 9 n.3, ECF No. 9 (citing 5 U.S.C. § 701(a)(2)).)  It is true that Chapter 7 of the APA, which concerns judicial review, does not apply "to the extent that . . . agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  As I have explained above, however, USCIS has not been granted the discretion to withhold indefinitely a decision resolving an I-485 application.

[4] The paragraphs of Irshad's complaint are not numbered sequentially, and for this reason my citations to the complaint refer to page numbers rather than paragraph numbers.  The paragraphs describing the harms that Irshad has suffered due to the USCIS's failure to adjudicate his I-485 application appear on pages 10 and 11 of the complaint.

10

It seems to me that because the APA gives Irshad the right to a decision resolving his I-485 application within a reasonable time, see, e.g., 5 U.S.C. § 555(b), Irshad has adequately alleged prejudice by claiming that he has been deprived of this right.  See Al Sawad v. Mayorkas, No. 11-CV-2923, 2012 WL 3238258, at *2 n.3 (D. Minn. Aug. 7, 2012).  (See also Compl. at 11, ECF No. 1.)[5]

In support of their argument that Irshad has failed to state a claim under the APA, the defendants refer me to the declaration of Francis J. Doyle.  (Defs.' Br. at 10, ECF No. 9.)  Doyle, who is an Acting Assistant Center Director of the USCIS Nebraska Service Center, states in his declaration that "[i]f USCIS were ordered to complete the adjudication of Plaintiff's application for adjustment of status, the case would likely be denied without prejudice to allow Plaintiff to re-file."  (Defs.' Index, Ex. A, Doyle Dec. ¶¶ 1, 33, ECF No. 10-1.)  Doyle also states that Irshad "has been granted a work permit every time he requested one."  (Id. ¶ 35.)  Doyle's declaration will be considered in connection with the defendants' motion for summary judgment, but I shall not consider it in connection with the defendants' motion to dismiss.

In short, I am not persuaded that Irshad has failed to allege that he was prejudiced by the defendants' failure to adjudicate his I-485 application within a reasonable time.  Therefore, I shall deny the defendants' motion to dismiss Irshad's APA claim pursuant to Rule 12(b)(6).

---

[5] Irshad has also alleged that the defendants' failure to act on his application has "impaired [his] ability to seek United States citizenship," obligated him to obtain "special travel authorization" to travel outside of the United States, jeopardized his ability to re-enter the United States, and caused him to incur a $220 extra expense to obtain a timely renewal of his driver's license.  (Compl. at 10-11, ECF No. 1.)  It appears, however, that these hardships would only be alleviated if the defendants were to grant Irshad's I-485 application.  In other words, although these allegations suggest that Irshad has been prejudiced by the defendants' failure to grant his I-485 application, they do not show that Irshad has been prejudiced by the defendants' failure to resolve his application.  Irshad concedes that this court does not have jurisdiction to order the defendants to grant his application.  Therefore, my finding that Irshad has adequately alleged that he has been prejudiced by the defendants' delay is not based on the harms alleged on pages 10 and 11 of the complaint.

## C.   Summary Judgment

### 1.   Material Facts

The defendants have submitted a statement of the facts that, in their view, "are undisputed and entitle Defendants to judgment as a matter of law." (Defs.' Br. at 2 & n.1, ECF No. 9.)  In summary, the facts cited by the defendants are these:

Irshad is a citizen and national of Afghanistan who entered the United States in 1988. (Defs.' Statement of Facts ¶¶ 1-2 (citing Compl. ¶¶ 15, 25; Defs.' Index, Ex. A, Doyle Dec. ¶3, ECF No. 10-1).)  "In 1989, Irshad applied for asylum with the legacy Immigration and Naturalization Service." (Id. ¶ 3 (citing Compl. ¶ 25; Doyle Dec. ¶ 3).)  Irshad was placed in removal proceedings, and his request for asylum was granted by an immigration judge on February 25, 1998.  (Id. ¶ 4 (citing Compl. ¶ 26; Doyle Dec. ¶ 3).)  Irshad filed an I-485 Application to Adjust to Permanent Resident Status in the spring of 1999, and on February 12, 2008, the USCIS denied the application.  (Id. ¶¶ 5-6 (citing Compl. ¶¶ 27-28; Doyle Dec. ¶ 4).)  "USCIS denied Irshad's Adjustment Application because, in his asylum application, Irshad admitted to carrying weapons, ammunition, four, and sugar from Pakistan to Afghanistan to aid the Mujahidin, a Tier III, undesignated terrorist group under 8 U.S.C. § 1182(a)(3)(B)(vi)[(III)]." (Id. ¶ 7 (citing Compl. ¶ 28; Doyle Dec. ¶ 14).)  Irshad filed a timely administrative appeal of this denial.  (Id. ¶ 8 (citing Compl. ¶ 30; Doyle Dec. ¶ 5).)  "On March 26, 2008, USCIS issued a policy memorandum directing that all adjustment of status applications denied for terrorism related inadmissibility grounds after December 26, 2007, should be reopened and placed on an adjudicatory hold if the applicant could benefit from an exercise of discretion, exempting the applicant from the inadmissibility ground." (Id. ¶ 9 (citing Doyle Dec. ¶¶ 5, 27; Consolidated Appropriations Act (CAA), Pub. L. 110-161, 121 Stat. 1844 (Dec. 26, 2007); 8 U.S.C. § 1182(d)(3)(B)(i)) (footnote omitted).)  On April 29, 2008, USCIS reopened Irshad's application and placed it on an adjudicatory hold.  (Id. ¶ 10.)  The FBI "completed its name check on Irshad's application in 2006.  (Id. ¶ 11 (citing Doyle Dec. ¶ 12).)  "USCIS completed the preliminary security checks within the Interagency Border Inspection System on Irshad," and "USCIS fingerprinted Irshad on May 31, 2012."  (Id. ¶¶ 12-13 (citing Doyle Dec. ¶¶ 10-11).)  According to Doyle, Irshad's I-485 application "remains pending because Irshad may, eventually, benefit from a discretionary exemption for his inadmissibility."  (Id. ¶ 14 (citing Doyle Dec. ¶ 33).)

Doyle also states that "[i]f USCIS were to end its adjudicatory hold on Irshad's Adjustment Application and adjudicate, USCIS would likely deny it." (Id. ¶ 15 (citing Doyle Dec. ¶ 33).)

Of these facts, Irshad disputes only the defendants' claim that USCIS would likely deny his I-485 application if the adjudicatory hold were ended. Irshad states, "[This claim] may have been true as of the date the Defendants filed their Motion on July 30, 2012," but on August 10, 2012, Napolitano "executed a broad based exemption" that "applies to Irshad's application and provides a procedure for the USCIS to grant I-485 applications such as Irshad's without any further consents outside of the USCIS." (Pl.'s Br. at 6, 8, ECF No. 12 (citing Pl.'s Index, Ex. 4).) See also Exercise of Authority Under the Immigration and Nationality Act, 77 Fed. Reg. 49821 (August 17, 2012) (hereinafter "the August 10, 2012, Exemption"). In reply, however, the defendants reiterate that "regardless of the recent August 10, 2012 exemption, if ordered to adjudicate Irshad's application today, USCIS would likely deny it." (Defs.' Reply Br. at 3, ECF No. 17.)

Also, Irshad has submitted an affidavit and other documents that provide support for many of the facts alleged in his complaint. (See Pl.'s Index, Exs. 1-3, ECF No. 13-1. See also "Counter-Statement of Facts," Pl.'s Br. at 3-6, 7-8, ECF No. 12.) Therefore, to the extent that they are material and properly supported, I will consider the facts outlined in Part I above describing the events that occurred from Irshad's birth in Afghanistan through the filing of his complaint, along with additional details that appear in Irshad's Counter-Statement of Facts.

2.      The Reasonableness of the Defendants' Delay in Resolving Irshad's I-485 Application

The defendants argue that they are entitled to summary judgment because "[a] four-year delay [caused by an] adjudicatory hold pending a potential exemption for a terrorism related inadmissibility ground is, as a matter of law, reasonable." (Defs.' Br. at 11, ECF No. 9 (footnote omitted).)

The parties agree that to determine whether an agency delay is reasonable, courts should consider six factors set forth in Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ("the TRAC factors"). The TRAC factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason," (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the

sphere of economic regulation are less tolerable when human health and welfare are at stake, (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority, (5) the court should also take into account the nature and extent of the interests prejudiced by delay, and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

Id. (citations omitted).  Before I proceed to analyze these factors, however, I must resolve the parties' dispute about the length of the delay.  As noted above, the defendants claim that the delay amounts to approximately four years, i.e., the time period between the reopening of Irshad's I-485 application on April 29, 2008, and the filing of his complaint on May 16, 2012.  (Defs.' Br. at 12-13, ECF No. 9.)  Irshad claims, however, that I "should consider the entire thirteen-plus years since Irshad filed his I-485 Application" on March 22, 1999.  (Pl.'s Br. at 19, ECF No. 12.)

There is no dispute that Irshad has been made to endure lengthy delays in the processing of his application for asylum and his application to adjust to permanent resident status.  I find, however, that the period of the relevant delay runs from April 29, 2008, when Irshad's I-485 application was reopened.  Though it is true that Irshad initially filed his application on March 22, 1999, it is also true that the application was denied on February 15, 2008.  Thus, it cannot be said that the resolution of Irshad's application had been delayed for more than thirteen years at the time of the filing of his complaint.  Moreover, the adjudicatory hold that is currently causing the delay in the processing of Irshad's reopened application stems from a change in the law (i.e., the CAA) and a policy memorandum issued by USCIS in 2008.  Under these circumstances, it is clear that the relevant period of delay runs from the reopening of Irshad's application in April 2008.  See Al Sawad v. Mayorkas, No. 11-CV-2923, 2012 WL 3238258, at *1-2, 5 (D. Minn. Aug. 7, 2012) (finding that where I-485 application was filed in December 2004, denied in January 2008, and reopened in March 2008 following the issuance of USCIS's policy memorandum, the length of the delay was four years because "Al Sawad's current application . . . has been only pending since 2008").  See also Kahn v. Scharfen, No. 08-1398, 2009 WL 941574, at *9 (N.D. Cal. April 6, 2009) ("Plaintiff would have the Court consider the entire time since he first applied for adjustment in 2003.  As the Government already processed the original application, however, the Court need only look at the time since the Government reopened Plaintiff's case and put adjudication on hold.  In reaching the original decision on Plaintiff's application, the Secretary did not have the authority to make a terrorism-related

exemption.  As the exemption is the basis for the current hold status on Plaintiff's application, it is reasonable for the Court to focus on the period of time since the CAA was passed and the possibility of exemption first arose.").[6]

In support of his argument that the relevant delay includes the entire thirteen year period since the filing of his application, Irshad argues that he "did not file a new application, and the Defendants did not redo the adjudicatory procedures they had already completed with respect to Irshad's application prior to temporarily dismissing it in February 2008." (Pl.'s Br. at 19, ECF No. 12.)  He adds that "background and security checks," which "took several years to conduct," were completed prior to the denial of his application.  (Id.)  It seems to me, however, that the fact that Irshad's application was reopened sua sponte due to a change in the law weighs in favor of a finding that the relevant delay period extends only from the date of the reopening.  Similarly, evidence that the background and security checks were completed before the reopening indicates that the current, relevant delay is not connected with the delay leading up to the denial of Irshad's application in February 2008.

Irshad also refers me to Ayyoubi v. Holder, No. 4:10CV1881, 2011 WL 2983462 (E.D. Mo. July 22, 2011), and Al-Rifahe v. Mayorkas, 776 F. Supp. 2d 927, 932 (D. Minn. 2011), as authority for the proposition that the longer period must be considered.  (Pl.'s Br. at 19-20, ECF No. 12.)  In Ayyoubi, the court stated,

> Because plaintiff's application was filed on March 30, 2006, denied on February 26, 2008, and reopened and put on hold on April 26, 2008 (with the denial decision vacated), this Court has two reference points–the date the application was originally filed, and the date the application was reopened and put on hold.  Thus plaintiff's application has either been pending five years or three years, depending on which date one chooses.  Keeping both those dates in mind, the Court proceeds with its analysis.

2011 WL 2983462, at *8 (emphasis added).  Ultimately, the court concluded that it "cannot hold that plaintiff's 5-year delay (or the 3-year hold) is unreasonable," and it granted the defendants' motion for summary judgment.  Id. at *10.  In short, because Ayyoubi avoids deciding whether the relevant

---

[6] I note parenthetically that Kahn was cited favorably by the Eighth Circuit in Debba v. Heinauer, 366 F. App'x 696, 699 (8th Cir. 2010).

period of the delay covers the time from the filing of the application or from its reopening, I fail to see how its analysis of this issue avails Irshad.

In Al-Rifahe, the plaintiff filed an I-485 application on March 3, 1998, and at the time of the district court's decision, "USCIS ha[d] neither granted nor denied" the application. 776 F. Supp. 2d at 929. The court noted that in the years following Al-Rifahe's application, Congress "passed several statutes relevant to USCIS' adjudication of his application," including the USA PATRIOT ACT, Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001); the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005); and the aforementioned Consolidated Appropriations Act of 2008 (CAA), Pub. L. No. 110-161, 121 Stat. 1844 (Dec. 26, 2007). See 776 F. Supp. 2d at 929-30. It also noted that during the pendency of Al-Rifahe's application, the USCIS issued a policy memorandum on March 26, 2008, that "instructed adjudicators to withhold adjudication of cases regarding individuals who are inadmissible for activities associated with a Tier III [terrorist] organization," and a second policy memorandum on January 23, 2010, that "lift[ed] the hold on applications by [Iraqi National Congress] members such as Al-Rifahe." 776 F. Supp. 2d at 930, 936. The court found that the delay in adjudicating Al-Rifahe's application ran from the date of the initial filing of the application, stating, "Al-Rifahe's application has been pending for an extraordinary long time, over thirteen years." Id. at 938.

Irshad acknowledges that his case differs from Al-Rifahe because Irshad's I-485 application was denied and subsequently reopened to be placed on adjudicatory hold, while Al-Rifahe's application remained pending ever since its original filing date. He argues, however, that "[t]here is no reason to treat Irshad's case differently from a case where an I-485 application was placed on adjudicative hold without first being denied and reopened (as was the case in Al-Rifahe)." (Pl.'s Br. at 19, ECF No. 12.) I disagree. The denial of Irshad's application in February 2008 makes it quite clear that the delay Irshad is now suffering is based solely on the adjudicatory hold that was imposed when his application was reopened on April 29, 2008. In other words, given the particular facts of the instant case, I simply cannot conclude that the agency has delayed adjudicating Irshad's I-485 application since March 22, 1999.

I shall now proceed to consider each of the TRAC factors in turn to determine whether the defendants are entitled to summary judgment.

16

a.      "Rule of Reason" and Congressional Timetable

The parties agree that there is no congressionally-mandated timeline for the adjudication of applications for adjustments of status.  (See Defs.' Br. at 14, ECF No. 9; Pl.'s Br. at 21, ECF No. 12.)[7]  The defendants argue that the adjudication of Irshad's application is governed by "rules of reason," however.  Specifically, the defendants cite (1) the CAA, which enabled the Secretary of Homeland Security to make exceptions to the inadmissibility grounds otherwise applicable to Tier III terrorist organizations, and (2) the memorandum issued by the USCIS on March 26, 2008, "directing its adjudicators to place on hold certain adjustment cases that could potentially benefit from a future exercise by the Secretary of her exemption authority as recently expanded under the CAA." (Defs.' Br. at 13, ECF No. 9.) Irshad responds that neither the CAA nor the March 26, 2008, memorandum "give [the defendants] unrestricted discretion to simply keep Irshad's I-485 Application on hold indefinitely, pending new legislation or the granting of a group exemption at some undefined point in time."  (Pl.'s Br. at 21, ECF No. 12.)  He adds that the August 10, 2012, Exemption undermines the notion that the defendants must engage in a "high-level and time consuming" process.  (Id. at 22.)  Furthermore, Irshad states that "the APA's general reasonableness standard" is the rule that should govern my analysis of the defendants' delay, and he refers me to cases wherein "delays of even two years or less could constitute unreasonable delay where no purported 'terrorist' bar was involved."  (Id. at 21-22.)

I agree with Irshad that the ultimate issue before me is whether the defendants' delay was reasonable.  I also find, however, that the statutory framework and other rules related to the processing of terrorism-related I-485 applications are quite relevant.  As noted previously, Irshad's application is currently on hold due to the enactment of the CAA in 2008, which granted the Secretary of Homeland Security discretion to exempt certain organizations from being considered Tier III terrorist organizations and to exempt certain individuals from the general rule that aliens involved in "terrorist activities" are inadmissible.  See 8 U.S.C. § 1182(a)(3)(B), (d)(3)(B).  The application is also on hold in accordance with USCIS's policy memorandum of March 26, 2008,

---

[7] It seems to me that if there were a mandatory deadline, there would be no need to consider the TRAC factors to determine whether the defendants' delay is reasonable.  See Forest Guardians v. Babbitt, 174 F.3d 1178, 1191 & n.19 (10th Cir. 1999).

17

which responded to the changes enacted by the CAA.  Section 1182(d)(3)(B) authorizes high-ranking officials to provide relief, at their discretion, in cases involving terrorism.  This is "qualitatively different from garden variety individual determinations of eligibility for immigration benefits."  Al Sawad v. Mayorkas, No. 11-CV-2923, 2012 WL 3238258, at *4 (D. Minn. Aug. 7, 2012) (explaining that the deadlines mentioned in 8 U.S.C. § 1571(b) do little to inform the analysis of terrorism-related applications).  See also id. at *3 ("Many immigration cases in which courts have found unreasonable delay involve ministerial-type duties to perform a record search or conduct a security check.  This case is on a much different footing.  It involves a sensitive and entirely discretionary grant of relief that implicates national security, foreign policy, and humanitarian concerns.").  In short, I find that the delays in processing terrorism-related applications for adjustment of status are governed by a "rule of reason"

Irshad claims that the August 10, 2012, Exemption should expedite the processing of his application.  (Pl.'s Br. at 22, ECF No. 12.)  Indeed it may.  However, my reading of the Exemption suggests that it is not directed specifically toward persons who once assisted the Mujahidin, it does not automatically cover all Tier III terrorist organizations, and it includes qualifications and evidentiary requirements that individual applicants must satisfy before they may benefit from the Exemption.   The August 10, 2012, Exemption is therefore unlike the January 23, 2010, memorandum discussed in Al-Rifahe v. Mayorkas, which, according to the district court, "lift[ed] the hold on applications by [Iraqi National Congress] members such as Al-Rifahe."  776 F. Supp. 2d at 936.  I also note that the August 10, 2012, Exemption has been in effect only for a matter of weeks, while Al-Rifahe did not file his complaint until nearly five months after the specific hold that had been delaying his application had already been lifted.  In short, I am not persuaded that the delay in this case is inconsistent with the applicable rules.[8]

-------------------

[8] I note in passing that Irshad suggests that summary judgment should be denied so that he can conduct "limited discovery" on the issue of "the potential that the August 10, 2012 Exemption may be applied" to him.  (Pl.'s Br. at 23, ECF No. 12.)  It is not clear what such discovery could entail.  In any event, Irshad's argument is not supported by affidavit or declaration as required under Federal Rule of Civil Procedure 56(d), and therefore I must reject it.

Irshad's I-485 application implicates unique, sensitive, complex issues that are subject to evolving policy considerations. The relevant rules have fluctuated significantly since the denial (and subsequent reopening) of Irshad's application in 2008. The defendants did not act arbitrarily or capriciously by reopening Irshad's application and holding it for adjudication; rather, they have followed these fluctuating rules and are attempting to apply them properly to Irshad's case. On balance, and after careful consideration, I find that the time the defendants have taken to adjudicate this case is attributable to "rules of reason." The first TRAC factor weighs in the defendants' favor, and the second TRAC factor is not helpful to my analysis.

> b.      Human Health and Welfare

The defendants argue that the third TRAC factor, which "considers the potential effect of the delay on human health and welfare," does not weigh in Irshad's favor because he has not been prejudiced by the delay. (Defs.' Br. at 15, ECF No. 9.) Indeed, the defendants claim that the delay has benefitted Irshad "[b]ecause the alleged delay prevents an otherwise likely denial" of his application. (Id.)

The defendants' argument speaks more directly to the fifth TRAC factor, which will be discussed below. There is no question that interests in human health and welfare are at stake in this action, however, which clearly weighs in favor of a finding that the delay in Irshad's case is not reasonable.

> c.      The Effect of Expediting Delayed Action on Other Agency Activities

The defendants claim that the fourth TRAC factor weighs in their favor because "expediting adjudication unduly interferes with USCIS's discretion." (Defs.' Br. at 16, ECF No. 9.) They state,

> Requiring USCIS to expedite adjudicating Irshad's application[] would intrude on the discretion Congress granted. A determination of whether the Defendants will exercise their discretionary exemption authority comprises part of the ultimate adjustment decision with Defendants' discretion. At the least, an order expediting adjudication would require Defendants to truncate any consideration of a potential exemption that might benefit Irshad under 8 U.S.C. § 1182(d)(3)(B)(i).

(Defs.' Br. at 16-17, ECF No. 9 (citation omitted).) In response, Irshad argues that "this factor may have weighed in the Defendants' favor" prior to the August 10, 2012, Exemption, but at this time "Irshad is aware of no barriers to the USCIS adjudicating and granting Irshad's application immediately." (Pl.'s Br. at 23, ECF No. 12.) The defendants reply, "Even assuming Irshad qualifies

19

for the August 10, 2012 exemption, expediting adjudication would interfere with Defendants'
discretion to develop guidelines for the new exemption and to apply these guidelines to Irshad's
case." (Defs.' Reply br. at 3, ECF No. 17.)

As I noted above, it is not clear that the August 10, 2012, will benefit Irshad. Nevertheless,
the Exemption does suggest that the defendants intend to accelerate the processing of applications
such as Irshad's. This, in turn, is an indication that mandating swift action in Irshad's case would
not be inconsistent with the defendants' priorities. Nevertheless, the defendants' argument that
expediting adjudication would negatively affect their ability to consider and apply an exemption in
Irshad's case is compelling, particularly given the newness of the August 10, 2012, Exemption. I
find that the fourth TRAC factor weighs slightly in the defendants' favor.

d.       The Nature and Extent of the Interests Prejudiced by Delay

The defendants argue that the fifth TRAC factor weighs in their favor because Irshad has not
been prejudiced by the delay. (See Defs.' Br. at 15, ECF No. 9.) They also emphasize that they have
"an interest in complying fully with the congressional mandates of the CAA and the resulting USCIS
policy." (Id.) Irshad responds that he has been prejudiced, and he refers me again to his inability
to seek citizenship, his obligation to obtain special travel authorization, and the extra expense he
incurred to renew his driver's license. (Pl.'s Br. at 23, ECF No. 12 (citing, inter alia, Compl. ¶¶ 35-
36, ECF No. 1).) As I have explained, however, these allegations state that Irshad has been
prejudiced by the defendants' failure to grant his application, not by their failure to adjudicate it.
(See supra n. 5.) See also Al Sawad v. Mayorkas, No. 11-CV-2923, 2012 WL 3238258, at *4 (D.
Minn. Aug. 7, 2012). Thus, they do not inform my analysis of TRAC factor five.

Irshad adds that he "has an interest in having his application adjudicated even if the ultimate
outcome is a denial" because the uncertainty surrounding his status has "infringed on his peace of
mind and prevented him from moving on." (Pl.'s Br. at 23-24, ECF No. 12 (citing Al-Rifahe v.
Mayorkas, 776 F. Supp. 2d 927 (D. Minn. 2011)).) The prejudice associated with this uncertainty
is relevant to my inquiry, but I find that it does not outweigh the defendants' interest in properly and
lawfully adjudicating Irshad's application. As the court explained in Al Sawad, "There is no
question that existing in legal limbo is difficult–and existing in legal limbo for many years can have
a substantial impact on a person's life. Nevertheless . . . the anxiety caused by the delay is not a

20

particularly concrete or quantifiable form of prejudice." 2012 WL 3238258, at *5. The nature and extent of the interests prejudiced by delay do not weigh in favor of a finding that the delay in Irshad's case is unreasonable.

       e.    Impropriety

      The defendants argue that "USCIS placed Irshad's application on hold, as well as other adjustment of status applications that implicate terrorism-related inadmissibility grounds, so that [the applicants] might benefit from a future exemption." (Defs.' Br. at 17, ECF No. 9 (citation omitted).) They add that they "have been, and continue to be, active in considering additional exercises of the Secretary's exemption authority," that "deciding whether Irshad's prior affiliation with the Mujahidin should be the subject if a new exercise" of this authority is an important interest, and that their ongoing process "has yielded results" in the form of exemptions issued in other cases. (Id. (citations omitted).) Irshad responds that this particular TRAC factor is "inapplicable here" because he "does not allege or have any reason to suspect impropriety by the Defendants." (Pl.'s Br. at 24, ECF No. 12.) He adds that "to the extent the Defendants did engage in some form of impropriety, granting summary judgment now would deprive Irshad the opportunity to learn about it through the discovery process." (Id.)

      The record shows that the delay is not attributable to impropriety, but rather to the complexity and sensitivity of I-485 applications that implicate the terrorism-related inadmissibility rules. This factor weighs in favor of a finding that the delay is not unreasonable. Irshad's suggestion that discovery should be allowed to permit him to search out evidence of impropriety must be rejected. See Fed. R. Civ. P. 56(d) (stating that to obtain time to gather evidence in opposition to a summary judgment motion, the nonmovant must show "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify its opposition").

      In summary, I find that the defendants' delay in adjudicating Irshad's I-485 application is reasonable. The defendants' decision regarding the application must be based upon a high-level analysis of complex, sensitive factors that implicate national security, foreign policy, and humanitarian interests, and the defendants are given complete discretion to grant or deny the application as they see fit. The record belies the notion that the defendants have neglected their obligation to decide applications such as Irshad's; rather, they reopened Irshad's application sua

sponte (after previously denying it) due to statutory and policy changes relevant to Irshad's case. Irshad is suffering prejudice due to the four-year delay, and his application undoubtedly concerns interests that are extremely important to him.  On balance, however, the relevant factors demonstrate that the delay is not unreasonable.  This conclusion is supported by the Eighth Circuit's holding in Debba v. Heinauer, 366 F. App'x 696 (8th Cir. 2010), wherein the court concluded that a delay in the processing of an I-485 application that, like Irshad's, was on hold pursuant to the March 2008 USCIS memorandum was not unreasonable, and that the defendants were therefore entitled to summary judgment.

Because Irshad has failed to show that the defendants' delay in resolving his application to adjust status is unreasonable, the defendants' motion for summary judgment must be granted.

**IT IS ORDERED** that the defendants' motion to dismiss, or, in the alternative, motion for summary judgment, ECF No. 8, is granted in part.  Specifically, the motion is denied insofar as the defendants seek dismissal pursuant to Rule 12(b)(1) or Rule 12(b)(6), but the defendants' motion for summary judgment is granted.

Dated October 2, 2012.

BY THE COURT

Warren K. Urbom
United States Senior District Judge

22