# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3870
_____

Jamshid Irshad,

*Plaintiff - Appellant*,

v.

Jeh Johnson, Secretary of the Department of Homeland Security; Rendell Jones, Acting Deputy Director of the United States Citizenship & Immigration Services; F. Gerard Heinauer, Director of the Nebraska Service Center; Eric H. Holder, Jr., Attorney General of the United States; James B. Comey, Director of the Federal Bureau of Investigation,

*Defendants - Appellees*.[1]

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 20, 2013
Filed: June 11, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary Johnson is automatically substituted for Janet Napolitano; Acting Deputy Director Jones is substituted for Michael Aytes; and Director Comey is substituted for Robert S. Mueller.

COLLOTON, Circuit Judge.

Jamshid Irshad, a native of Afghanistan, filed suit seeking to compel the Attorney General of the United States, the Secretary of Homeland Security, the Director of the Federal Bureau of Investigation, the Acting Deputy Director of the United States Citizenship and Immigration Services ("The USCIS"), and the Director of the Nebraska Service Center for the USCIS (collectively "the officials") to decide immediately his pending application for adjustment of status. The district court[2] granted summary judgment in favor of the officials. Irshad appeals, and we affirm.

I.

Irshad was born in Afghanistan in 1972. Following the former Soviet Union's invasion of Afghanistan in 1979, Irshad aided the National Islamic Front of Afghanistan, one of many groups—collectively known as the Mujahidin—that opposed Soviet-backed forces. Irshad supported the group by carrying supplies and giving tours to Western journalists in Afghanistan. In 1988, Irshad fled to the United States. He was granted asylum in 1998.

On March 22, 1999, Irshad filed an I-485 application with the USCIS to adjust his status from asylee to lawful permanent resident. On February 15, 2008, the USCIS denied Irshad's application for adjustment of status because his transportation of supplies for the Mujahidin constituted material support of an undesignated terrorist organization. *See* 8 U.S.C. § 1182(a)(3)(B).

In 2007, however, Congress significantly broadened the authority of the Secretary of Homeland Security to exempt aliens from the terrorism-related

---

[2] The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska, now retired.

-2-

inadmissibility provisions of 8 U.S.C. § 1182(a)(3)(B). Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. J., § 691(a), 121 Stat. 1844, 2364-65 (2007); 8 U.S.C. § 1182(d)(3)(B)(i). Following that legislation, in March 2008, the USCIS issued a policy memorandum concerning all adjustment-of-status applications that were denied on terrorism-related inadmissibility grounds after December 26, 2007. Memorandum from Jonathan Scharfen, Deputy Dir., U.S. Citizenship & Immigration Servs., *Withholding Adjudication and Review of Prior Denials of Certain Categories of Cases Involving Association with, or Provision of Material Support to, Certain Terrorist Organizations or Other Groups* (Mar. 26, 2008). The memorandum provided that all of these applications would be reopened and placed on adjudicatory hold if the applicant could benefit from a subsequent exercise of discretion that would exempt the applicant from a terrorism-related inadmissibility provision. *Id.*

Pursuant to that policy memorandum, the USCIS reopened Irshad's application on April 29, 2008, and placed it on adjudicatory hold. According to the officials, Irshad's application "remains pending because Irshad may, eventually, benefit from a discretionary exemption for his inadmissibility." The officials assert that the hold inures to Irshad's benefit, because "[i]f the USCIS were to end its adjudicatory hold on Irshad's . . . [a]pplication and adjudicate, the USCIS would likely deny it."

On August 10, 2012, the Secretary of Homeland Security gave the USCIS broad authority to grant adjustment-of-status applications like Irshad's without consulting other agencies or officials beyond the USCIS. *See* Exercise of Authority Under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act, 77 Fed. Reg. 49,821, 49,821-22 (Aug. 17, 2012). The officials continue to maintain, however, that if ordered to adjudicate Irshad's application today, the USCIS would likely deny it, because "expediting adjudication would interfere with [the officials'] discretion to develop guidelines for the new exemption and to apply these guidelines to Irshad's case."

Irshad filed suit against the officials on May 16, 2012. Invoking the mandamus statute, 28 U.S.C. § 1361, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201, Irshad asked the court to compel the officials "to issue a final ruling on his I-485 [a]pplication." Irshad alleged that the officials were "unlawfully withholding and unreasonably delaying action on" his application, had "failed to carry out the adjudicative functions delegated to them by law," and had "deprive[d] [him] of his right to a timely adjudication of his duly filed I-485 application."

The officials moved to dismiss Irshad's complaint for lack of subject matter jurisdiction and for failure to state a claim. Alternatively, they moved for summary judgment, arguing that the USCIS's delay in adjudicating Irshad's adjustment-of-status application was reasonable. They submitted a declaration of Francis J. Doyle, the Acting Assistant Center Director of the Nebraska Service Center for the USCIS, attesting to the following:

- Irshad admitted in his asylum application that he had provided support to the National Islamic Front of Afghanistan;

- Prior to the 2007 legislation and the March 2008 memorandum, Irshad was inadmissible because of his provision of support to an undesignated terrorist organization;

- Irshad's application remained pending due to the 2007 legislation and the March 2008 memorandum;

- Between mid-2006 and February 29, 2012, the USCIS had granted more than 14,000 exemptions in cases involving terrorism-related inadmissibility grounds;

- Throughout the adjudicatory hold, Irshad had been fingerprinted "to ensure that the case [would be] ready to be adjudicated once all other issues [we]re resolved"; and

-4-

- If ordered to adjudicate Irshad's application, the USCIS would likely deny it.

In response, Irshad submitted his own declaration attesting that the adjudicatory delay "infringed on [his] peace of mind" and that he preferred to receive a ruling on his application one way or another, rather than be subjected to an indefinite hold.

The district court denied the officials' motion to dismiss. The court ruled that neither 8 U.S.C. § 1252(a)(2)(B)(ii) nor 5 U.S.C. § 701(a)(2) divested the district court of jurisdiction over a claim that the USCIS had failed to adjudicate an adjustment-of-status application within a reasonable time. The court further reasoned that 28 U.S.C. § 1331 gave the court subject matter jurisdiction over Irshad's claim under the APA. The court then granted summary judgment for the officials, ruling that the delay in resolving Irshad's application for adjustment of status was not unreasonable.

Irshad appeals. The officials do not contend on appeal that any statute precluded the district court from considering Irshad's claim, and we need not address questions of "statutory jurisdiction" *sua sponte*. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998); *Lukowski v. INS*, 279 F.3d 644, 647 & n.1 (8th Cir. 2002); *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 142-44 (1st Cir. 2007); *Kramer v. Gates*, 481 F.3d 788, 790-91 (D.C. Cir. 2007).

II.

Irshad argues that the officials have unreasonably delayed adjudication of his application for adjustment of status. The APA requires an agency to proceed to conclude a matter presented to it "within a reasonable time," 5 U.S.C. § 555(b), and directs a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). District courts are divided on the question

-5-

whether, under these provisions, a court has power to entertain a claim that the government's delay in adjudicating an adjustment-of-status application is unreasonable. *Compare, e.g.*, *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 932-34 (D. Minn. 2011), *Sharadanant v. USCIS*, 543 F. Supp. 2d 1071, 1074-75 (D.N.D. 2008), *and Al Kurdy v. USCIS*, No. 8:07CV225, 2008 WL 151277, at *4 (D. Neb. Jan. 10, 2008), *with, e.g.*, *Tan v. Chertoff*, No. 4:07CV236, 2007 WL 1880742, at *4 (E.D. Mo. June 29, 2007), *and Ting Hao Yang v. Gonzalez*, No. 4:06CV3290, 2007 WL 1847302, at *1-2 (D. Neb. June 25, 2007).

We need not decide whether an extreme delay by the government in adjudicating an adjustment-of-status application could amount to a "failure to act," 5 U.S.C. § 551(13), that would empower the district court under the APA to compel agency action "unlawfully withheld." *Id.* § 706(1). *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62-64 (2004). Assuming for the sake of analysis that federal courts have authority to order the government to adjudicate adjustment-of-status applications within a certain period of time, Irshad has not shown that the delay in his case was unreasonable.

The period of relevant delay here runs from April 2008, when Irshad's application was reopened, through the district court's consideration of his action in 2012. Irshad's application is on adjudicatory hold because of the changes in law and policy in 2007 and 2008 that first gave the Secretary authority to grant Irshad the exemption from inadmissibility provisions that he desires. The time between Irshad's filing of his application for adjustment of status in 1999 and the creation of this new exemption authority in 2007-08 was not attributable to the officials. Irshad was ineligible for adjustment of status before these changes in law and policy, and the agency denied his application in February 2008 because of his previous material support for a terrorist organization. The delay attributable to the officials, therefore, is less than five years.

-6-

To evaluate the reasonableness of delay, the parties embrace the analysis of the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Applying that approach, the officials' delay in adjudicating Irshad's adjustment-of-status application is not unreasonable. Congress has not dictated any timetable for the Executive to make sensitive terrorism-related decisions in this area. There is no indication that the deliberative process of the government officials in this case is a sham. We agree with the district court that "[t]he [officials'] decision regarding the application must be based upon a high-level analysis of complex, sensitive factors that implicate national security, foreign policy, and humanitarian interests, and the [officials have been] given complete discretion to grant or deny the application as they see fit." The USCIS is actively considering exemptions, and several group-based exemptions that benefit thousands of applicants have been approved. *See, e.g.*, Exercise of Authority Under the Immigration and Nationality Act, 77 Fed. Reg. 51,545, 51,545 (Aug. 24, 2012); Exercise of Authority Under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act, 77 Fed. Reg. 41,795, 41,795-96 (July 16, 2012); Exercise of Authority Under the Immigration and Nationality Act, 76 Fed. Reg. 70,463, 70,463-64 (Nov. 14, 2011); Exercise of Authority Under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act, 76 Fed. Reg. 14,418, 14,418-19 (Mar. 16, 2011); Exercise of Authority Under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act, 76 Fed. Reg. 2130, 2130 (Jan. 12, 2011). The August 2012 policy establishes a procedure for the USCIS to grant or deny adjustment-of-status applications like Irshad's without high-level consultations, but the government still has a strong interest in completing the exemption process in terrorism-related cases with great care. A mistaken exemption could have serious negative repercussions.

Without the exemption process allowed by the 2007 legislation and the 2008 policy memorandum, Irshad would have been denied adjustment of status based on his provision of material support to a terrorist organization. Changes in law and policy have created an opportunity for the Executive Branch, in its discretion, to grant

Irshad relief that otherwise would be unavailable to him. Irshad's complaint that the government is taking too long to decide about the availability of an exemption is not well taken under the circumstances.

\*    \*    \*

The judgment of the district court is affirmed.

_____